**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRYSTAL J., | : | CIVIL ACTION |
|         Plaintiff | : | |
|     v. | : | |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of the Social Security | : | |
| Administration, | : | |
|         Defendant | : | NO.  25-3889 |

**<u>MEMORANDUM</u>**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                      May 29, 2026

Crystal J. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final

decision of the Commissioner of the Social Security Administration ("the Commissioner"),

denying her claim for Disability Insurance Benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act.  Plaintiff has filed a brief in support of

her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply.  For

the reasons set forth below, Plaintiff's request for review is granted and the case remanded to the

Commissioner.

**I.      PROCEDURAL HISTORY**[1]

On December 7, 2022, Plaintiff applied for DIB and SSI, alleging that her disability

commenced on April 29, 2022.  R. 17.  The claim was denied initially and upon reconsideration;

therefore, Plaintiff requested a hearing.  *Id.*  On June 12, 2024, Plaintiff appeared for a telephonic

hearing, before Marc Silverman, Administrative Law Judge ("the ALJ"); Plaintiff, represented by

an attorney and vocational expert Luisa Seuss, ("the VE"), testified at the hearing.  *Id.*  On June

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of her Request for Review ("Pl. Br."), the Brief of Defendant ("Resp."), Plaintiff's Reply to Brief of Defendant ("Reply"), and the administrative record.  ("R.").

28, 2024, the ALJ, using the sequential evaluation process ("SEP") for disability,[2] issued an

unfavorable decision.  R. 17-30.  The Social Security Administration's Appeals Council denied

Plaintiff's request for review, on August 19, 2024, making the ALJ's decision the Commissioner's

final determination.  R. 7-8.  Plaintiff presently seeks judicial review, and the parties have

consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   Personal History

Plaintiff, born on August 20, 1978, was 43 years old on her alleged disability onset date

and 46 years old at the time of the administrative hearing.  R. 28.  Plaintiff has three adult children,

two sons, with whom she lives, and one daughter.  R. 44-45.

B.   Plaintiff's Testimony

At the June 12, 2024, hearing, Plaintiff testified that she had worked as a Certified Nurse's

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1.  If claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2.  If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3.  If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4.  If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5.  The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Assistant ("CNA") for fifteen years.  R. 42.  The job required her to stand and walk for more than two hours per day.  R. 42.  Her responsibilities included transferring clients weighing 150 to 175 pounds between a wheelchair and a bed, grocery shopping, driving clients to appointments, using a Hoyer lift, administering medication, changing bed linens, and checking clients' blood pressure. R. 43-44.

Plaintiff suffered two injuries while working as a CNA.  On October 21, 2021, She was injured by a steel hammer while helping a client repair a heavy-duty plastic outdoor chair, resulting in pain in her neck, shoulder, and back.  R. 45.  On March 22, 2022, Plaintiff caught a client who lost their balance and began to fall, exacerbating her previous injuries and causing numbness in her legs.  R. 46.  As a result of both injuries, Plaintiff experiences sharp pains in the back of her neck, numbness and sharp pain in her arms, pressure and sharp pain in her legs, weakness throughout her body, and difficulty standing for prolonged periods.  R. 46, 48.  Plaintiff also experiences back spasms and daily numbness, tingling, and sharp pain in her legs. R. 47, 50.  The pain is "unbearable," particularly when she lifts, bends, or walks, although it is sometimes alleviated by applying heat.  R. 47.  Plaintiff experiences balance issues and uses a walker prescribed by her doctor.  R. 47.  Plaintiff also has asthma, which is triggered by changing seasons and extremely hot or cold weather.  R. 53. She experiences anxiety and difficulty breathing when the weather changes or when she catches a cold.  R. 53.  Plaintiff recently developed high blood pressure.  R. 53.

Plaintiff testified about her mental limitations.  She becomes depressed when thinking about her inability to provide for herself and her lack of independence, as she must rely on others to meet her basic needs.  R. 50.  Plaintiff testified that she does not know "what's going to happen to [her] next because [she's] not getting any better."  R. 50.  She experiences depression daily and

sometimes does not shower for two to three days at a time. R. 49. Some days are worse than others. R. 51. Plaintiff described extreme anxiety when she is outside or when reflects upon her experiences during the two years preceding the hearing. R. 54. Plaintiff testified that she felt "a little extremely anxious" during the hearing. R. 54.

Plaintiff sees a psychiatrist for depression, anxiety, and auditory hallucinations. R. 51. She takes medication daily. R. 53. For depression, she takes Zoloft, Abilify, Cymbalta, Cogentin, and Lorazepam. R. 51. The side effects of these medications include drowsiness, dizziness, and poor memory. R. 52. For neck, back, and leg pain, she takes Meloxicam, OxyContin, and pain ointments, which produce dizziness and drowsiness. R. 52. For her asthma, Plaintiff takes Albuterol, Covent, Prednisone, and uses a nebulizer. R. 53. Plaintiff's three-monthly epidural injections do not help at all. R. 49. She visits a doctor twice per month and receives trigger point injections in her neck and lower bac; these shots relieve some pressure for a short period of time. R. 49-50. Plaintiff also attends physical therapy. R. 49.

Plaintiff receives assistance from her sons, mother, and aide. R. 53. On the recommendation of her doctor, Plaintiff hired an aide nine months prior to the hearing. R. 53. On a typical day, the aide helps prepare meals, takes Plaintiff's blood pressure, administers medication, does laundry, and transports Plaintiff to doctor's appointments. R. 52. Plaintiff is unable to perform household chores; her aide and sons assist with those tasks. R. 52. She attends church with her family, but not as frequently as previously, because she experiences pain when standing, sitting, and moving around for extended periods. R. 52. Plaintiff also has difficulty being around large groups of people at church. R. 55. Plaintiff interacts only with family. R. 56. She experiences memory loss because of the medication she takes. R. 56. Plaintiff stays in her bedroom for most of the day unless she has a doctor's appointment. R. 57. Pain limits her ability

to watch television, sit, stand, and engage in social activities for extended periods. R. 49.

Plaintiff can only sit for 30 minutes at a time and stand for 15-20 minutes before her legs become weak and her pain increases.  R. 54.  She stays in her room much of the time when she cannot receive help.  R. 54.  She can walk half a block before having to sit on her rollator[3] "for a while" and then resume walking.  R. 54.  She has difficulty lifting and carrying because of pain in her neck and back. She is only able to lift half a gallon of milk.  R. 55.

C.    Vocational Testimony

The VE classified Plaintiff's past job as nurse's assistant, medium,[4] semi-skilled,[5] performed at a very heavy[6] level.  The ALJ asked the VE to consider a person having Plaintiff's age, education and work experience who is limited to sedentary[7] work and:  can climb ramps and stairs occasionally; can never climb ladders, ropes, or scaffolds; can stoop, crouch, and kneel occasionally; can never crawl; must avoid concentrated exposure to extreme heat, extreme cold, humidity, and vibration; can tolerate only occasional exposure to unprotected heights; must avoid concentrated exposure to pulmonary irritants such as smoke, dust, concentrated fumes and poor ventilation; can perform simple tasks; can tolerate no more than occasional exposure to supervisors, coworkers, and the general public, but would be able to have frequent interaction during a 30-day training period; and can tolerate only low stress work, which is defined as routine

---

[3] A rollator is a wheeled walker that provides stability support, allows the user to sit comfortably, and can carry items such as oxygen or groceries.  *Rollator*, Science Direct (last visited May 15, 2026), https://www.sciencedirect.com/topics/nursing-and-health-professions/rollator.

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[5] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. It is less complex than skilled work but more complex than unskilled work."  20 C.F.R. §§ 404.1568(b), 416.968(b).

[6] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more."  20 C.F.R. §§ 404.1567(e), 416.967(e)

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties."  20 C.F.R. §§ 404.1567(a), 416.967(a).

work with no more than occasional changes in the work.  R. 58-59.  The VE opined that, although this individual could not perform Plaintiff's past work, they could perform three sedentary, unskilled[8] jobs:  (1) final assembler, 20,700 positions in the national economy; (2) electronics inspector, 10,100 positions in the national economy; and (3) eyeglass frame polisher, 1,600 positions in the national economy.  R. 59.

The ALJ then asked the VE to consider the same person but needing one unscheduled absence every other month.  R. 60.  The VE opined that this individual could perform the same three jobs.  R. 61.  The VE further opined that the following limitations render someone unemployable – inability to:  an individual who cannot perform work on a sustained basis for eight hours per day; sit for six hours per day; stand for at least two hours per day; being off task 15 percent or more of the workday; arriving late for work two or more times per month; and requiring one to two unscheduled 15-minute breaks per day.  R. 61-63.  The VE further opined the combination of an inability to interact with coworkers or supervisors on more than an occasional basis and the inability to sit for at least six hours per day would preclude all work in the national economy.  R. 62.  Finally, the three jobs identified by the VE require frequent reaching and do not involve a production-rate pace.  R. 63.

### III.    THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

1.    [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2027.

2.    [Plaintiff] has not engaged in substantial gainful activity since April 29, 2022, the alleged onset date (20 CFR 404.1571 *et seq.*).

---

[8] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 404.1568(a).

6

3.  [Plaintiff] has the following severe impairments: lumbosacral and cervical degenerative disc disease, lumbar and cervical radiculopathy, obesity, depression, anxiety disorder, post-traumatic stress disorder (PTSD), and schizoaffective disorder (20 CFR 404.1520(c) and 416.920(c)).

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(a) except can climb ramps and stairs occasionally; can never climb ladders, ropes, and scaffolds; can stoop, crouch, and kneel occasionally; can never crawl; must avoid concentrated exposure to extreme heat, extreme cold, humidity, and vibration; no more than occasional exposure to unprotected heights; must avoid concentrated exposure to pulmonary irritants such as smoke, dust, concentrated fumes, and poor ventilation; limited to simple tasks; no more than occasional interaction with supervisors, co-workers, and the general public, but would be able to have frequent interaction during a 30-day training period; and limited to low stress work, which is defined as routine work with no more than occasional changes in the work.

6.  [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  [Plaintiff] was born on August 20, 1978 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. [Plaintiff] subsequently changed age category to a younger individual age 45-49 (20 CFR 404.156 and 416.963).

8.  [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.963).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not the [Plaintiff] has

transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from April 29, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 20, 22, 27-29.

## IV.   DISCUSSION

A.    Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  By contrast, the Commissioner's legal

8

conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.        Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.        Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform her past relevant work, she could perform other work and, hence, was not disabled. R. 17-29. Plaintiff disputes the ALJ's decision, arguing that the ALJ's RFC

determination that she could only tolerate occasional interaction with supervisors but would be able to tolerate frequent interaction with supervisors throughout a 30-day training period defies logic. Pl. Br. at 10-18. This court agrees.

RFC is the most an individual can do despite their limitations on a regular and continuing basis, defined as eight hours per day, five days per week. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1. The RFC must be supported by the record, and the ALJ must explain how the evidence in the record supports the RFC. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) ("the ALJ's finding of residual functional capacity must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'")

On more than one occasion, the undersigned was faced with the same RFC determination by the same ALJ and noted that it was facially illogical, requiring remand. *Gosia S. v. Bisignano*, No. CV 25-3392, 2026 WL 533745, at *4 (E.D. Pa. Feb. 25, 2026); *Yazmin Q. v. O'Malley*, Civ. A. No. 24-1531, 2024 WL 4567277, *6 (E.D. Pa. Oct. 24, 2024). This court sees no reason to distinguish this case from *Gosia S. and Yazmin Q.*, and the Commissioner makes no effort to make the distinction. Upon remand, the ALJ shall reconcile and explain how Plaintiff can only tolerate "occasional" interaction with supervisors, yet can tolerate "frequent" interaction with supervisors during an initial 30-day training period.

An implementing order and order of judgment follow.